# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| ROBERT ANDERSON, | |
| Petitioner, | No. 18 C 4916 |
| v. | Judge Thomas M. Durkin |
| TERI KENNEDY, Warden, Pontiac Correctional Center, | |
| Respondent. | |

## MEMORANDUM OPINION AND ORDER

A jury found Robert Anderson guilty of four counts of first-degree murder. He is serving a life sentence at the Pontiac Correctional Center in Illinois, in the custody of Warden Teri Kennedy. Anderson, represented by counsel, seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2254. The Warden answered the petition seeking its dismissal. R. 9. For the following reasons, Anderson's petition is denied and the Court declines to issue a certificate of appealability.

## Background

Moises Reynoso and Robert Lilligren were shot and killed just after midnight on March 6, 2003. By chance at the time of the shooting, two police officers were across the street about 60-65 feet away. When the officers heard the initial shots, they looked up and saw the final shots. The shooter then ran towards the officers, but the officers were separated from the shooter by a chain-link fence. The shooter's hood fell back from his head as he ran past the officers, and they were momentarily able to see his face from about 10-15 feet away. They also saw that the shooter was

wearing gloves and holding a gun. One officer recognized the shooter but could not immediately remember his name. It was lightly snowing at the time. *See* R. 10-9 at 138 (XXXXXX-138:6-7) (first officer testimony); R. 10-10 at 108 (YYYYY-108:11) (second officer testimony).

The officers eventually found a hole in the fence and chased the shooter until he was still about 15 feet ahead of one officer and 25-30 feet ahead of the other. At that point, the officers heard screaming (which proved to be a friend of the victims) causing them to turn and head back to the scene of the shooting. One officer broadcast a description of the shooter over the police radio: "male black, all black—or all dark clothing." *See People v. Anderson*, 72 N.E.3d 726, 732 (Ill. App. Ct. 1st Dist. 2017). The Illinois appellate court noted that Anderson "admits on appeal that he is of 'African-American ancestry' but appears to be 'Caucasian or Hispanic.'" *Id.* at 742.

Four minutes later, Anderson was stopped by other officers several blocks from the scene of the shooting. The arresting officer also retrieved a pair of gloves he saw Anderson drop. Approximately 15 minutes later, both officers who initially gave chase identified Anderson as the shooter as he sat in a police car. During trial, one of the officers testified that he later remembered he had arrested Anderson about 18 months prior. In that instance, the officer was face-to-face with Anderson several times for about two hours in a well-lit police station.

Later that night, another officer attempted to retrace the shooter's likely path from the scene of the shooting to where Anderson was arrested. Following foot prints in the snow, that officer discovered a gun on the roof of a garage. Forensic testing

2

matched the gun to the bullets found at the scene of the shooting. There were no fingerprints on the gun or bullet casings. One of Anderson's gloves tested positive for gunshot residue, but samples taken from his coat sleeves did not.

Reynoso's sister testified that he used to be friends with Anderson but they had stopped spending time together. Nevertheless, the sister testified, Anderson continued to come looking for Reynoso, and Reynoso avoided him, one time asking the sister to tell Anderson that Reynoso wasn't home.

The jury convicted Anderson on the basis of this evidence. Prior to trial, Anderson moved to introduce expert testimony, supported by a brief, *see* R. 10-2 at 181-88, and oral argument, *see* R. 10-7 at 95-109. In his brief, Anderson argued that his expert would testify to the following:

> (1) Common misperceptions regarding eyewitness identifications, including the following factors relevant to the present case: confidence is *not* related to accuracy, stress of the presence of a weapon reduces the reliability of identification, eyewitnesses overestimate time frames, detail salience (unusual details grab attention but detract overall), the problem of cross-racial identifications, the effect of time on the reliability of identifications and the forgetting curve, the impact of partial disguising features such as a hat covering hair, and global versus detailed processing (height or build versus facial features).
> (2) Certain identification procedures can reduce the accuracy of: eyewitness identifications, including the following factors relevant to the present case: (A) suggestivity/bias, and the effects of post-identification feedback.
> (3) The generally accepted theory of memory in the field of psychology and how it applies to eyewitness identifications (dispelling common misconceptions about memory working like a videotape and memories being "etched" onto your brain, explaining the process how events can be "remembered" differently than they actually occurred).

3

> (4) Factors associated with verified cases of misidentification and as observed in this particular case.
> (5) The eyewitnesses in the present case are not reliable based on the factors in this case.

R. 10-2 at 181-82. The trial court considered the briefs and heard oral argument but did not have the expert testify at a preliminary hearing. The trial court denied the motion reasoning:

> [T]his case, also contains what could be considered strong circumstantial evidence on the route of flight and recovery of gun and positive gunshot residue that support the identification. So the case isn't going to rise or fall on the identifications of two police officers alone. . . .
>
> In my view . . . [the] matter at issue, identification, is not beyond the ken of the average juror. . . .
>
> Expert testimony is not admissible, on matters of common knowledge unless the subject is difficult to understand and explain. Once again my view is that a matter of identification is a matter of common knowledge which can be argued effectively either way and which is supported by a [well-settled] jury instruction . . . .[1]

---

[1] The jury was instructed in relevant part as follows:

> When you weigh the identification testimony of a witness, you should consider all the facts and circumstances in evidence, including, but not limited to, the following:
> The opportunity the witness had to view the offender at the time of the offense.
> The witness's degree of attention at the time of the offense.
> The witness's earlier description of the offender.
> The level of certainty shown by the witness when confronting the defendant.
> The length of time between the offense and the identification confrontation.

R. 10-14 at 154 (BBBBBB-154).

> This is a situation where I don't think the witness' experience and qualifications are beyond that of the average juror's and I don't feel that it will aid the jury in reaching its conclusion. I feel it would possibly confuse the jury and possibly mislead the Jury. . . .
>
> A court should carefully consider the necessity and relevance of the expert testimony in light of the facts of the case before admitting it for the jury's consideration. . . . So when I consider [the] facts [of this case] and compare them against some of the facts in cases where an expert could have been used to aid the jury, I don't—I think the facts cut in favor of the State on this particular case.

R. 10-7 at 106-08. The appellate court affirmed:

> Here, defendant's conviction does not rest solely on the identification made by Officers Sedlacek and Park. . . . The trial court weighed the facts and circumstances of this case and correctly concluded that the conclusion to be reached would not "rise or fall on the identification of two police officers alone." . . .
>
> Here, the trial court did not abuse its discretion in prohibiting the defense from presenting expert witness on identification testimony, especially where Dr. Fulero would be commenting on the "reliability" of these witnesses, which is clearly a function of the jury, not a purported expert. The trial court conducted a meaningful inquiry of the expert witness and the content to which he would testify at a hearing on defendant's motion and, in its discretion, denied the motion. The record shows that the trial court balanced the probative value against the possible prejudice that may arise from allowing this expert to testify. In addition, the jury was given an instruction on how to weigh eyewitness identification testimony. Illinois Pattern Jury Instructions, Criminal, No. 3.15 (4th ed. 2000). Therefore, we find that the trial court's decision was not arbitrary or unreasonable and does not amount to an abuse of discretion.

*People v. Anderson*, 72 N.E.3d at 747-48, *appeal denied,* 84 N.E.3d 365 (Ill. 2017), and *cert. denied sub nom. Anderson v. Illinois*, 138 S. Ct. 336 (2017).

During closing argument, Anderson's counsel addressed facts about the scene that could undermine the officers' identification of Anderson:

> Because they want you to think like this, because there are two officers who basically say they were able to look from the middle of the gas station lot, through a chain link fence, [past] these trees, [past] the street, [past] the sidewalk, into that parking lot behind Leader Liquors, and they were able to see a man dressed in all dark clothing firing a gun.
>
> And they told you not only were they able to see a man firing a gun, but we were able to see his face. I put this jacket on, ladies and gentlemen, when Officer Sedlacek was on the stand. I won't do it again, but I encourage you folks when you get back there, put it on, stand at the other end of the jury room, turn sideways, put the hood up, and see if [any one] of you can identify the face of the person who is in that coat.

R. 10-14 at 63-64 (BBBBBB-63:18–64:10). In his opening statement, defense counsel also several times described the weather at the time of the shooting and pursuit as a "driving snowfall." *See*, *e.g.*, R. 10-9 at 35 (XXXXX-36:3). He did not make such an argument in closing, presumably because this characterization was contradicted by the officers' testimony.

## Analysis

Anderson raises only one issue in his petition: whether exclusion of the expert on the reliability of eyewitness identification violated his Due Process rights. A writ of habeas corpus may be granted "with respect to any claim that was adjudicated on the merits in State court proceedings" only if "the adjudication of the claim resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States."

6

28 U.S.C. § 2254(d)(1). The Warden points out that the Supreme Court has not established a right to present expert testimony on the reliability of eyewitness identification, and the Seventh Circuit has held such testimony is generally properly excluded. *See United States v. Carter*, 410 F.3d 942, 950 (7th Cir. 2005) ("[T]he credibility of eyewitness testimony is generally not an appropriate subject matter for expert testimony because it influences a critical function of the jury—determining the credibility of witnesses." (quoting *United States v. Hall*, 165 F.3d 1095, 1107 (7th Cir. 1999)); *see also United States v. Welch*, 368 F.3d 970, 973 (7th Cir. 2004) ("In attempting to show that the district court did abuse its discretion, Welch faces an uphill battle against the long line of Seventh Circuit cases holding that district courts did not commit abuses of discretion by excluding expert testimony regarding the reliability of eyewitness identifications."). This argument, however, ignores more recent Seventh Circuit holdings indicating an openness to such testimony. *See Jimenez v. City of Chicago*, 732 F.3d 710, 722 (7th Cir. 2013) ("Whether expert testimony regarding witness perception, memory, reliability, and deception could assist a properly-instructed jury in its task of evaluating trial testimony is controversial." (citing *Hall*, 165 F.3d at 1118 (Easterbrook, J., concurring in judgment) ("Jurors who *think* they understand how memory works may be mistaken, and if these mistakes influence their evaluation of testimony then they may convict innocent persons . . . . That a subject is within daily experience does not mean that jurors know it *correctly*.") (emphasis in original))).

In any event, Anderson does not contend that there is a clearly established right to present expert testimony on eyewitness reliability to a jury. *See* R. 11 at 2 ("Robert Anderson does not argue he has a constitutional right to present expert testimony on eyewitness identification. . . ."). Rather, Anderson's petition asserts his right to present a defense generally, as that right is set forth in *Holmes v. South Carolina*, 547 U.S. 319 (2006). *See* R. 11 at 2 (Anderson argues "only that the Illinois courts violated his due process rights under Holmes, by excluding such testimony because of the perceived strength of the state's case."); *see also* R. 1 at 33 ("The holding of the Illinois appellate court 'ignored' the 'fundamental principles' established by *Holmes*."). Anderson contends that *Holmes* stands for the principle that the probative value of defense evidence may not be assessed relative to the strength of the prosecution's evidence. *See id.* at 34. Anderson argues that the state appellate court violated *Holmes* when it discounted the probative value of the expert's testimony regarding the reliability of eyewitness testimony because "there was evidence of [Anderson's] guilt apart from the eyewitness identifications." *Id.* at 33.

Anderson's analysis, however, skips prior steps in the proper analysis of whether a state court evidentiary ruling violates Due Process. Due Process "guarantees criminal defendants a meaningful opportunity to present a complete defense." *Holmes*, 547 U.S. at 324; *see also id.* at 325 ("the defendant[] [has a] right to put on a defense"). "This right is abridged by evidence rules that infringe upon a weighty interest of the accused and are arbitrary or disproportionate to the purposes they are designed to serve." *Id.* at 324. In other words, "the Constitution thus

8

prohibits the exclusion of defense evidence under rules that serve no legitimate purpose or that are disproportionate to the ends that they are asserted to promote." *Id.* at 326.

With respect to the admissibility of expert testimony regarding eyewitness reliability, the Illinois Supreme Court has explained:

> In Illinois, generally, an individual will be permitted to testify as an expert if his experience and qualifications afford him knowledge which is not common to lay persons and where such testimony will aid the trier of fact in reaching its conclusion. In addressing the admission of expert testimony, the trial court should balance the probative value of the evidence against its prejudicial effect to determine the reliability of the testimony. In addition, in the exercise of its discretion, the trial court should carefully consider the necessity and relevance of the expert testimony *in light of the particular facts of the case* before admitting that testimony for the jury's consideration. This court has held that expert testimony is only necessary when the subject is both particularly within the witness's experience and qualifications and beyond that of the average juror's, and when it will aid the jury in reaching its conclusion. Expert testimony addressing matters of common knowledge is not admissible unless the subject is difficult to understand and explain. When determining the reliability of an expert witness, a trial court is given broad discretion.

*People v. Lerma*, 47 N.E.3d 985, 992 (Ill. 2016) (internal citations and quotation marks omitted) (emphasis added). This focus on whether an expert's testimony will assist the trier of fact "in light of the particular facts of the case" is also present in federal law. *See Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 591 (1993) (Whether "evidence or testimony [will] 'assist the trier of fact to understand the evidence or to determine a fact in issue' . . . . goes primarily to relevance. The

9

consideration has been aptly described . . . as one of 'fit.'"); *Owens v. Auxilium Pharm., Inc.*, 895 F.3d 971, 973 (7th Cir. 2018) ("Because Dr. Abbas's testimony did not fit the facts of the case, it was not likely to assist the trier of fact to understand the evidence or to determine a fact in issue."); *Florek v. Village of Mundelein*, 649 F.3d 594, 602-03 (7th Cir. 2011) ("In other words, expert testimony is more likely to satisfy Federal Rule of Evidence 702's requirement that it 'assist the trier of fact to understand the evidence or determine a fact in issue' when something peculiar about law enforcement (e.g., the tools they use or the circumstances they face) informs the issues to be decided by the finder of fact. . . . And when the testimony is about a matter of everyday experience, expert testimony is less likely to be admissible."); *see also Poulter v. Cottrell, Inc.*, 2014 WL 5293595, at *4 (N.D. Ill. June 24, 2014) ("Helpfulness is sometimes phrased as a matter of 'fit' between the suggested testimony and the issue that it is meant to support. . . . If the issue is 'peculiar,' expert testimony is more likely to be informative and helpful, whereas, 'when the testimony is about a matter of everyday experience, expert testimony is less likely to be admissible.'" (quoting *Florek,* 649 F.3d at 602-03)). In both Illinois and federal law, courts are to determine the probative value of expert testimony with regard to whether the testimony will assist the trier of fact in the context of the facts of the case as a whole.

In order to prevail on his petition, Anderson would have to demonstrate that Illinois's rule governing admission of expert testimony "serve[s] no legitimate purpose or [is] disproportionate to the ends that [it is] asserted to promote." *Holmes*, 547 U.S. at 326. But he makes no such argument. Rather, Anderson's argument is based on a

superficial analogy between this rule and the principle set forth in *Holmes* that state courts may not exclude defense evidence because the prosecution's evidence is sufficient to convict. He argues that both the state trial and appellate courts violated this principle by excluding the expert testimony on the basis that Anderson's verdict would "not rise or fall on the identification of the two police officers alone" because there was other evidence of Anderson's guilt. *See* R. at 4, 31. But *Holmes* reversed a trial court's decision to exclude fact evidence implicating a third party in the crime. It is simply not relevant to a decision to exclude expert testimony.

Any similarity between the *Holmes* principle and the state courts' decisions disappears in the face of the undeniable substantive difference between fact evidence and expert evidence. The relevance of fact evidence is assessed relative to the legal elements of the ultimate question to be decided. Assessment of relevance to a particular legal claim can generally be made without a broader evidentiary context. Hence, the principle in *Holmes* prohibiting weighing of the relevance of various pieces of evidence. By contrast, the relevance of expert evidence is assessed relative to whether it helps the trier of fact determine a fact in issue that is relevant to the ultimate question. Whether expert evidence helps the trier of fact can only be assessed in light of the other evidence the trier of fact has to consider. Without evidentiary context, "helpfulness" has no meaning.

Furthermore, factual context is especially relevant to determining the "helpfulness" of expert testimony on the reliability of eyewitness identification in particular. As many courts have noted, lay jurors have personal experience with

common circumstances relevant to the reliability of eyewitness identification—e.g., distance, obstructed views, time to observe. Notably, all of these factors were present in Anderson's case. This is in contrast to *People v Lerma* where the Illinois Supreme Court affirmed reversal of the trial court's exclusion of expert testimony because in that case the only evidence against the defendant was eyewitness identification that occurred in circumstances that might not cause a lay juror to question its reliability without assistance from expert testimony. Unlike the defendant in *Lerma*, it was possible for Anderson to make a case for the unreliability of the eyewitness identification through aggressive cross examination and argument, without the need for expert testimony on the issue.

In any case, to the extent Anderson argues (1) that the appellate court misapplied the Illinois rule regarding exclusion of expert testimony, or (2) that the Supreme Court would disagree with Illinois's rule regarding the relevance of expert evidence, those arguments are beside the point. Rather, the salient point here is that the right set forth in *Holmes* is not relevant, or at least not clearly relevant, to interpretation of a rule governing potential exclusion of expert testimony. Thus, Anderson has not identified a "clearly established" right that was violated in his case. Other courts have reached similar conclusions. *See Schroeder v. Premo*, 712 Fed. App'x 634, 636 (9th Cir. 2017) ("Schroeder has not shown that this exclusion of the testimony was contrary to, or an unreasonable application of, clearly established federal law relating to broad principles of admissibility of evidence in criminal proceedings. Schroeder has also failed to demonstrate the existence of any

contradictory clearly established law governing the more specific proposition of admissibility of expert testimony on eyewitness identification. Indeed, we have consistently affirmed the exclusion of this type of expert testimony under less-demanding, less-deferential tests than the one AEDPA imposes on reviewing federal courts."); *Thomas v. Heidle*, 615 Fed. App'x 271, 282 (6th Cir. 2015) ("The Supreme Court has not directly spoken on the law applicable to the circumstances of this case. And we can grant relief only if we conclude that the exclusion of Loftus's testimony in this particular case was 'so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.' Present-day case law demonstrates that fair-minded jurists still disagree on the exclusion of expert testimony on eyewitness identification, even when it is effectively excluded on a blanket basis."); *Stroud v. Brewer*, 2018 WL 3417326 (E.D. Mich. July 13, 2018) ("[T]he Supreme Court has never held that a state trial court's exercise of discretion to exclude expert testimony violates a criminal defendant's constitutional right to present a defense. Habeas relief is not warranted on this claim."). Therefore, Anderson's petition is denied.

Lastly, the Court declines to issue a certificate of appealability pursuant to 28 U.S.C. § 2253(c)(2). Rule 11(a) of the Rules Governing § 2254 Cases provides that the district court "must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." *See Gonzalez v. Thaler*, 132 S.Ct. 641, 649 n.5 (2012). To obtain a certificate of appealability, a habeas petitioner must make "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). This

demonstration "includes showing that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Slack v. McDaniel,* 529 U.S. 473, 483-84 (2000); *see also Lavin v. Rednour,* 641 F.3d 830, 832 (7th Cir. 2011). For the reasons discussed, Anderson has not made such a showing. Accordingly, certification of Anderson's claim for appellate review is denied.

## Conclusion

For the foregoing reasons, Anderson's petition, R. 1, is denied. The Court also declines to issue a certificate of appealability.

ENTERED:

*/s/ Thomas M. Durkin*

Honorable Thomas M. Durkin
United States District Judge

Dated: April 4, 2019